## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GERALD EDWARDS, | : | |
| *Plaintiff* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| KAREN B. RICE, | : | |
| *Defendant* | : | No.   19-3559 |

### MEMORANDUM

PRATTER, J.                                                        SEPTEMBER 30, 2021

*Pro se* Plaintiff Gerald Edwards sued Karen B. Rice-Smith,[1] an Environmental Protection Specialist with the Bucks County Department of Health, based on events that occurred on March 15, 2018. In his original complaint, Mr. Edwards raised claims for violation of due process and intentional infliction of emotional distress stemming from his convictions for violating local ordinances. The District Court *sua sponte* dismissed his complaint without prejudice for failure to state a claim and for failure to comply with Fed. R. Civ. P. 8(a). Then, Mr. Edwards filed an untimely Amended Complaint, which the District Court dismissed again, with prejudice.

Mr. Edwards appealed this dismissal and the Third Circuit Court of Appeals vacated this Court's order, holding that "Edwards's amended complaint, when read in conjunction with the original complaint and the attached exhibits, adequately states that Rice searched his property without a warrant in violation of his Fourth Amendment rights." *Edwards v. Rice*, No. 20-1217 (3d Cir. Dec. 10, 2020) (per curiam) ("App. Op.") at 5.

---

[1] Ms. Rice-Smith notes that, although Mr. Edwards brought suit against "Karen B. Rice", her name is Karen Rice-Smith.

The case was then remanded here for resumption of proceedings. On remand, Ms. Rice-Smith now moves to dismiss the Amended Complaint for failure to state a claim. The Court will grant the motion in part and deny it in part.

## PROCEDURAL BACKGROUND

In his most recent court filing, Plaintiff Gerald Edwards asks "how does a dead ground hog get to be a federal case?" Doc. No. 22, at 6. It is with this provocative question that the Court will begin.

Mr. Edwards initiated this *pro se* civil action on August 6, 2019 by filing a Complaint against Karen B. Rice-Smith (the "Original Complaint") and a Motion for Leave to Proceed *In Forma Pauperis* in this Court. Doc. Nos. 1 & 2. The specific basis for Mr. Edwards's claims against Ms. Rice-Smith, however, was unclear. The Original Complaint appeared to involve citations he received for violating local property ordinances and related proceedings in the Bucks County Court of Common Pleas. The document spanned 98 pages, along with a 29-page exhibit, and included scattered allegations and transcript excerpts, many of which did not appear to relate to Ms. Rice-Smith. Doc. No. 2. The Court granted Mr. Edwards leave to proceed *in forma pauperis*, construed his Original Complaint as raising claims pursuant to 42 U.S.C. § 1983, and dismissed it without prejudice pursuant to 28 U.S.C. § 1915 for failure to state a plausible basis for a claim and failure to provide notice to Ms. Rice-Smith of the claims against her under Rule 8.

Although Mr. Edwards missed the deadline for filing an amended complaint and the case was closed, the Court construed a November 20, 2019 letter from him as his Amended Complaint, which the Court again found insufficient. Doc. No. 7. The Amended Complaint (another 66 pages) included excerpts of the Constitution, legal texts, and assorted Wikipedia pages, interspersed with stand-alone pages peppered with a host of assertions. The Court issued a November 27, 2019

Order stating that the case would remain closed. Mr. Edwards filed a Notice of Appeal on January 28, 2020 and, on August 21, 2020, the Third Circuit Court of Appeals directed this Court to enter a final order. On September 17, 2020, the Court entered a Memorandum and Order dismissing Mr. Edwards's claims with prejudice for failure to state a claim and failure to comply with Rule 8.

Mr. Edwards again appealed this Court's dismissal. In a per curiam opinion, the Third Circuit Court of Appeals held that the Court must construe the Original Complaint and Amended Complaint together and that, through this approach, Mr. Edwards asserted sufficient factual matter for a Section 1983 claim as a Fourth Amendment violation based on an alleged search without a warrant. The Court of Appeals vacated the dismissal and remanded the case to this Court.

On remand, the Court directed Mr. Edwards to serve the Amended Complaint on Ms. Rice-Smith. Doc. No. 15. Ms. Rice-Smith was served on February 5, 2021, which she promptly moved the Court to dismiss for failure to state a claim. Doc. No. 20. Mr. Edwards filed two responses in rapid succession. Doc. Nos. 21 & 22.[2] The motion is now ripe for consideration.

## FACTUAL BACKGROUND

Ms. Rice-Smith is an Environmental Protection Specialist for Bucks County. Doc. No. 20 ¶ 1. Mr. Edwards alleges that on September 14, 2017, Ms. Rice-Smith and her supervisor, Rich Flack, "came out to where [Mr. Edwards] was working and wanted to search the property [he] was on." Doc. No. 7, at 2.[3] Mr. Edwards thought they were there "for the ground hog" so he "told

---

[2] Given Mr. Edwards's *pro se* status, the Court will treat the second response as supplemental briefing. Mr. Edwards's second response on March 29, 2021 also asserts that he would like to move for summary judgment. Doc. No. 22, at 8 ("I also under rule 56 move for summ[a]ry judgment as it tells us in 56."). Because this motion is not properly filed, no discovery has been conducted in this case, and Ms. Rice-Smith has not yet even filed an answer to the Amended Complaint, the Court will treat this request for summary judgment as an argument in the alternative that is rendered moot by the motion to dismiss.

[3] Based on the Third Circuit Court of Appeals opinion, the Court will construe the Original Complaint and Amended Complaint in tandem to piece together Mr. Edwards's factual allegations. App. Op. at 5.

them where they could find the dead ground hog." *Id.* Mr. Edwards does not provide additional color aside from noting that a ground hog "was being tossed around the neighborhood." *Id.* Mr. Edwards contends that Ms. Rice-Smith and Mr. Flack were "walking around and looking" and turned over containers, a lawn mower, a cardboard box, and pieces of lumber in the lot. *Id.* Mr. Edwards asked whether Ms. Rice-Smith and Mr. Flack had a warrant, and they responded that they did not. *Id.*

Then, on March 15, 2018, Mr. Edwards was loading a 100 foot-by-100 foot van when a group arrived at the property where he was working. *Id.* at 2–3. The group included Ms. Rice-Smith, Mr. Flack, Sandy Morgan,[4] and "the constables McDermott and McMeeking." *Id.* Then, Mr. Edwards states that he was arrested by "2 of them" and, as he was led away, he saw "all of them" walking onto the property, starting to look through things,[5] and taking photos. *Id.* In the Original Complaint, Mr. Edwards alleges that Ms. Rice-Smith violated his right to due process when she "and staff came here to look over" his property without a warrant on the day of his arrest. Doc. No. 2, at 8.

Mr. Edwards was issued health code citations for chickens (dead and alive), beehives, and debris on the property at 1652 Prospect Ave Langhorne, PA. Doc. No. 2, at 29–30, 33–34. In an exhibit to his Amended Complaint, Mr. Edwards includes a transcript excerpt from unidentified proceedings where he is found guilty for six health code violations and states "I didn't pay the fines, I went to jail." Doc. No. 2-1, at 13, Tr. at 81:1–2. He also includes a Bucks County

---

[4] Sandy Morgan is a Middletown Township Code Enforcement Officer. Doc. No. 2, at 36.

[5] Mr. Edwards does not provide additional detail on what the group looked through on this date, so the Court will not speculate. *See* Doc. No. 7, at 3 (noting that the group started "to look through the sulf [sic] there").

Incarceration record showing that he was incarcerated from March 15, 2018 to March 19, 2018. Doc. No. 7, at 6.

Mr. Edwards then appeared *pro se* at a civil hearing on June 8, 2018 in the Bucks County Court of Common Pleas for the health code citations. Doc. No. 2, at 31. Ms. Morgan, the Middletown Township Code Enforcement Officer, testified at the civil hearing that Mr. Edwards owned the property at 1652 Prospect Avenue based on municipal records, and that Mr. Edwards owned a business, Wild River Enterprises LLC, which was also registered at this address. *Id.* at 36–40. She testified that she had received three complaints from neighbors of the property and was cautioned that she should not go to the property alone. *Id.* at 42–43. As a result, she was escorted by one police officer for an August 2017 inspection. *Id.* at 43. She then testified that, in 2018, representatives from the "board of health" joined the inspections because they had a separate citation system for violations. Doc. No. 2, at 91–92. [6]

In addition to his allegations regarding the search without a warrant, Mr. Edwards also makes assorted other allegations in his Original Complaint and Amended Complaint. In the Original Complaint, he alleges injury due to his emphysema, based on the actions of the police officers: "the 2 of them drag[ged] me up the hill about [one-quarter] of a mile to the top" and, as a result, he was out-of-breath and light-headed entering the police car. Doc. No. 2, at 6, 25. He alleges intentional infliction of emotional distress and that "Sandra Morgan and staff and police have added to my poor health." Doc. No. 2, at 9. He attaches a doctor's note from November 8, 2019 regarding his obstructive sleep apnea and Chronic Obstructive Pulmonary Disease in his Amended Complaint. Doc. No. 7, at 62–64. He also asserts that "they took me to jail [and] on the

---

[6] The Court notes that this testimony, included in Mr. Edwards's Original Complaint, contradicts his allegation in the Amended Complaint that Ms. Rice-Smith was present at the earlier search on September 14, 2017. *Compare* Doc. No. 2, at 91–92 *with* Doc. No. 7, at 2. However, for reasons noted below, this issue is rendered moot because claims based on the September 14, 2017 search are time-barred.

way they drove reckle[ssly] up the road, weaving in and out of tra[ffic] at a high [] speed[,] putting my life and limb at risk." Doc. No. 2, at 25.

In his Amended Complaint, Mr. Edwards briefly alludes to false imprisonment, including only the Pennsylvania code reference for the offense. Doc. No. 7, at 7–8. Mr. Edwards also challenges the jurisdiction of the "plaintiff" and the Court of Common Pleas in his underlying criminal charge. *See, e.g.*, Doc. No. 2, at 8, 21–24; Doc. No. 7, at 9–12. And Mr. Edwards raises the Fifth, Thirteenth, and Fourteenth Amendments as additional bases on which his civil rights were violated. Doc. No. 7, at 16.[7] He contends that Ms. Rice-Smith presents a conflict of interest that violated the Due Process Clause because she "has a vested interest in the outcome of the case[:] money." Doc. No. 7, at 34; *see also id.* at 12 (discussing the right to due process).

Mr. Edwards seeks "treble exemplary damages" of $500,000 for Ms. Rice-Smith's "deliberate malice" in the case. Doc. No. 2, at 9. The Court will construe this as a request for punitive damages. Mr. Edwards also states that "Sandra Morgan and staff and police have added to my poor health," but does not allege involvement by Ms. Rice-Smith in the arrest or the drive to his hearing, or otherwise allege any facts to support an amount of compensatory damages related to his health. *Id.* Ms. Rice-Smith moves to dismiss all claims.

### LEGAL STANDARDS

"A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by

---

[7] In his March 29, 2021 response, Mr. Edwards for the first time raises what could be construed as a First Amendment claim based on damage to his "religious property" including a "cross and a statue." Doc. No. 22, at 4. This claim appears to relate to the September 14, 2017 visit; if so, it is time-barred based on the discussion below. Even if the claim is instead based on conduct during the March 15, 2018 search and the Court were to construe this response to the Motion to Dismiss as another pleading, the two-year statute of limitations for a § 1983 claim would have expired on March 15, 2020. Thus, any additional § 1983 claims potentially raised in Mr. Edwards's March 29, 2021 response are time-barred.

lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). In assessing a motion to dismiss a complaint, the Court may consider "only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[8] The Court must accept as true all reasonable inferences emanating from the allegations and view those facts and inferences in the light most favorable to the nonmoving party. *See Rocks v. Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Lloyd v. Salameh*, 442 F. App'x 630, 631 (3d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). If the Court dismisses a claim, "amendment must be permitted in [the *pro se*] context unless it would be inequitable or futile." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

Based on an especially liberal construction of Mr. Edwards's various submissions, the Court will evaluate the following claims: Section 1983 claims based on a Fourth Amendment violation due to an unlawful search, a Fourteenth Amendment violation of due process, and a Thirteenth Amendment violation, as well as state tort law claims based on intentional infliction of

---

[8] In his March 29, 2021 response, Mr. Edwards argues that *Twombly* is "a consumer FCC [case that] has not[h]ing to do with me." Doc. No. 22, at 4. For Mr. Edwards's benefit, the Court will briefly explain the relevance of *Twombly*. *Twombly* is a Supreme Court case that tells this Court how to evaluate motions to dismiss a complaint for failure to state a claim. While *Twombly* did involve an FCC claim, it interpreted Federal Rule of Civil Procedure 12(b)(6), which applies to virtually all federal court claims. Ms. Rice-Smith's Motion to Dismiss the Amendment Complaint is filed "Pursuant to F.R.C.P. 12(B)(6)." *See* Doc. No. 20, at 1. Courts have applied *Twombly* across a broad range of case types, including Section 1983 claims based on alleged violations of constitutional rights.

emotional distress and unlawful imprisonment. The Court will also address Mr. Edwards's challenge to the exercise of jurisdiction by the Bucks County Court of Common Pleas over the health code citations.

## I.  Section 1983 Claims

The Court has construed Mr. Edwards's constitutional claims against Ms. Rice-Smith as Section 1983 claims.[9] "To establish liability under 42 U.S.C. § 1983, a plaintiff must show that the defendant[], acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury." *Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005). To state a claim against an individual official, Mr. Edwards must plausibly allege that Ms. Rice-Smith had "personal involvement in the alleged wrongdoing." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005).

Ms. Rice-Smith argues that she is entitled to qualified immunity to the Section 1983 claims as a public official. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 817 (1982). In considering a qualified immunity defense, courts assess two distinct issues: 1) whether the facts as alleged would violate a constitutional or statutory right and 2) whether the violation was one of "clearly established law." *Pearson v. Callahan*, 555 U.S. 223, 239 (2009). Courts can begin the qualified immunity analysis with either step. *Id.* "Unless the plaintiff's allegations state a claim of violation of clearly established law, a

---

[9] Mr. Edwards does not specify whether he brings suit against Ms. Rice-Smith in her personal or official capacity. The Court will treat the Section 1983 claims as claims against Ms. Rice-Smith in her personal capacity because punitive damages are not available against municipalities under Section 1983. *Newport v. Facts Concerts*, 453 U.S. 247, 271 (1981).

defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

## II.    State Tort Law Claims

Mr. Edwards also asserts state law claims for intentional infliction of emotional distress and false imprisonment.   This Court has supplemental jurisdiction over the state tort law claims because they involve a "common nucleus of operative facts" with Mr. Edwards's Section 1983 claims. *Lyon v. Whisman*, 45 F.3d 758, 760 (3d Cir. 1995). "Under Pennsylvania law, . . . a tort of intentional infliction of emotional distress lies where a person, whose acts constitute extreme or outrageous conduct, intentionally inflicts severe emotional distress on another person." *Dennis v. DeJong*, 867 F. Supp. 2d 588, 659 (E.D. Pa. 2011).   "Conduct is considered 'extreme or outrageous' where the conduct goes beyond all possible bounds of decency, and is regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 660 (citations omitted).

"Under Pennsylvania law, false imprisonment is the unlawful detention of another person." *Keahey v. Bethel Twp.*, 562 F. App'x 119, 122 (3d Cir. 2014). "False imprisonment requires that (1) the defendant acted with intent to confine plaintiff within fixed boundaries, (2) the defendant's act directly or indirectly resulted in the plaintiff's confinement, and (3) plaintiff was conscious of the confinement or harmed by it." *Id.* at 123.

Ms. Rice-Smith contends that she is immune from tort liability under Pennsylvania's Tort Claims Act. The Tort Claims Act states that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. Cons. Stat. § 8541. However, this immunity does not apply to intentional torts.  "Section 8550 of Pennsylvania's Political Subdivision Tort Claim Act denies immunity to any public employee when the court finds that his or her conduct constitutes, among

other things, 'willful misconduct.' 'Willful misconduct' in this context has the same meaning as the term 'intentional tort.'" *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 214 (3d Cir. 2001) (citations omitted). Ms. Rice-Smith also argues that Mr. Edwards fails to allege facts to establish a plausible tort claim.

**DISCUSSION**

So here we are again, on what some might think feels like Groundhog Day. The Court will begin with Mr. Edwards's Section 1983 claims, followed by his state tort law claims and other remaining issues.

## I.    Section 1983 Claims

Mr. Edwards alleges that the September 14, 2017 and March 15, 2018 searches without a warrant violated his Fourth Amendment rights. He also contends that the Bucks County Court of Common Pleas hearing violated his Fifth and Fourteenth Amendment Due Process rights, and that his treatment violated the Thirteenth Amendment prohibition on slavery.

### A.  Fourth Amendment Search

Mr. Edwards alleges that Ms. Rice-Smith conducted searches without a warrant on September 14, 2017 and March 15, 2018. The Third Circuit Court of Appeals held that "Edwards's amended complaint, when read in conjunction with the original complaint and the attached exhibits, adequately states that Rice searched his property without a warrant in violation of his Fourth Amendment rights." App. Op. at 5. The Court will apply the Third Circuit Court of Appeals holding that Mr. Edwards has stated "'sufficient factual matter' to support the plausibility of a Fourth Amendment claim against Rice" as law of the case. App. Op. at 4; *see also In re Cont'l Airlines, Inc.*, 279 F.3d 226, 232–33 (3d Cir. 2002) (describing the doctrine of law of the case).

### 1. Statute of Limitations

However, the Third Circuit Court of Appeals agreed that "the initial complaint failed to give Rice fair notice of the claims against her, as required by Rule 8." App. Op. at 3. In her motion to dismiss, Ms. Rice-Smith points to this Court's September 17, 2020 Memorandum, which noted that the two-year statute of limitations for Section 1983 claims could preclude claims based on the events of September 14, 2017, absent a finding that Mr. Edwards's November 20, 2019 Amended Complaint relates back to the date of his Original Complaint. *See* Doc. No. 20 ¶ 40; Doc. No. 12, at 4. "[I]t is well-established that the touchstone for relation back is fair notice, because Rule 15(c) is premised on the theory that 'a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide.'" *Glover v. FDIC*, 698 F.3d 139, 146 (3d Cir. 2012) (quoting *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149 n.3 (1984)). Mr. Edwards did not allege that Ms. Rice-Smith took part in a September 14, 2017 search of his property in the Original Complaint. And the Third Circuit Court of Appeals agreed that the Original Complaint failed to give Ms. Rice-Smith fair notice of the claims against her. Thus, Mr. Edwards's claims relating to the September 14, 2017 search are time-barred and will be dismissed. However, his claims relating to the March 15, 2018 search remain.

### 2. Qualified Immunity

Ms. Rice-Smith also asserts a qualified immunity defense. Doc. No. 20-1, at 7. "An officer conducting a search is entitled to qualified immunity where clearly established law does not show that the search violated the Fourth Amendment." *Pearson*, 555 U.S. at 243–44. In evaluating a defense of qualified immunity at the motion to dismiss stage, the key question is whether Ms. Rice-Smith "could be expected to know that certain conduct would violate statutory or constitutional

rights." *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982).  While an inspector certainly could be expected to realize the need for a search warrant in general, Ms. Rice-Smith contends that she reasonably believed that the consent exception to the warrant requirement applied because Mr. Edwards consented to the search.   Doc. No. 20-1, at 9.  Specifically, Mr. Edwards's Amended Complaint states that he allowed Ms. Rice-Smith on his property because he thought that she and her colleagues were responding to a dead ground hog issue.  Doc. No. 7, at 2.

The Third Circuit Court of Appeals has held that "a plaintiff has no obligation to plead a violation of clearly established law in order to avoid dismissal on qualified immunity grounds." *Thomas v. Independence Twp.*, 463 F.3d 285, 293 (3d Cir. 2006).  The Third Circuit noted that, under the pre-*Twombly* notice pleading standard, "the district court is oftentimes hard-pressed to conduct a fact-specific qualified immunity analysis at an early stage in the litigation."  *Id.* at 299.  A vague complaint that narrowly survives a Rule 8 motion "clearly does not provide good fodder for the framing of a qualified immunity defense."  *Id.* at 299.

Here, the Third Circuit Court of Appeals has found that Mr. Edwards pleaded sufficient factual matter to establish a Fourth Amendment violation.  Mr. Edwards's complaints do not aid this Court in ascertaining what precisely the "ground hog" issue was or provide details that would enable the Court to determine whether he consented to the search and, if so, whether this consent was limited in any way.  For example, Ms. Rice-Smith's motion states that "Plaintiff thought that Defendant was there for the ground hog living on the Property," Doc. No. 20-1, at 9, while the investigative report included by Mr. Edwards in the Original Complaint states that Mr. Edwards "said there is a dead groundhog up along the access (dirt) road to this property," Doc. No. 2, at 28.  Mr. Edwards also alleges that he asked Ms. Rice-Smith and her colleagues if they had a search warrant, which could create a plausible inference that Mr. Edwards did not consent to the search.

Ms. Rice-Smith also raises the ground hog-based consent only for the September 14, 2017 inspection, not the March 15, 2018 inspection. Doc. No. 20-1, at 9–12. It appears plausible that the same ground hog, dead or alive, was not present months later. Given the lack of factual matter to determine whether qualified immunity applies, the Court cannot at this stage rule on qualified immunity based on consent to a search.

### 3.  Expectation of Privacy

Ms. Rice-Smith also argues that Plaintiff does not establish that he owns, rents, or otherwise occupies the property at issue. Doc. No. 20-1, at 11. To establish Fourth Amendment rights at a property, a person must have "a legitimate expectation of privacy in the invaded place." *Rakas v. Illinois*, 439 U.S. 128, 143 (1978). These rights extend to the curtilage surrounding one's home, and also to a person's place of business. *United States v. Dunn*, 480 U.S. 294, 300 (1987); *See v. City of Seattle*, 387 U.S. 541, 546 (1967).[10] The Court first notes there appears to be some confusion surrounding the address for the relevant property. The Original Complaint lists the property's address as 1652 Prospect Ave. Langhorne, PA. Doc. No. 2, at 29, 37–39. However, Ms. Rice-Smith's Motion to Dismiss states that the "matter pertains to a property located at 1659

---

[10]  However, Fourth Amendment rights have not been extended to the concept of "business curtilage." The concept of "curtilage" surrounding a home is based on the expectation of privacy in one's dwelling and courts in this district have noted that, because "the concept of curtilage does not apply to buildings other than dwellings," "the backyard of [a defendant's] business premises would not be afforded the same protection as part of the curtilage of a dwelling." *United States v. Wolfe*, 375 F. Supp. 949, 958–59 (E.D. Pa. 1974). The Supreme Court left open the question of whether Fourth Amendment protections could extend to "business curtilage" in *Dow Chemical Co. v. United States*, 476 U.S. 227, 239 n.7 (1986). The Court will not wander into this issue further because Ms. Rice-Smith does not brief this issue in her motion to dismiss, and the Third Circuit Court of Appeals has determined that Mr. Edwards "adequately states" a Fourth Amendment right in this context. App. Op. at 5. Nonetheless, the Court considers it appropriate to note this Fourth Amendment issue.

Ramble Road, Langhorne, Pennsylvania." Doc. No. 20-1, at 3.  In his Response, Mr. Edwards states "I'm not aware of a property at 1659 Ramble Rd." Doc. No. 22, at 3.[11]

Regardless of this dispute, Mr. Edwards's complaints support a plausible inference that he owned the 1652 Prospect Ave. address because the transcript testimony included in his Original Complaint provides Ms. Morgan's assessment that Mr. Edwards owned the property at 1652 Prospect Ave. and that the property is registered to a business owned by Mr. Edwards.  Doc. No. 2, at 37–40.  Moreover, Mr. Edwards's responsibility for the 1652 Prospect Ave. property appears to be the basis for the underlying health code citations.  If Mr. Edwards did not own or rent the property, it is unclear why he would be subject to health code violations for its condition.  Thus, the Court will not dismiss the Fourth Amendment claim based on a failure to establish that he owned the property.

### 4.  Personal Involvement

Lastly, Ms. Rice-Smith argues that Mr. Edwards fails to plead facts to establish Ms. Rice-Smith's personal involvement in the March 15, 2018 alleged search.  Doc. No. 20-1, at 12. However, Mr. Edwards states that a group including Ms. Rice-Smith arrived at the property on March 15, 2018 and that, as he was led away, he saw "all of them" walking onto the property, starting to look through things, and taking photos.  Doc. No. 7, at 2–3.  The phrase "all of them" appears to include Ms. Rice-Smith.  The Court will deny the motion to dismiss as to the Section 1983 Fourth Amendment claim based on the March 15, 2018 search, but grant the motion as it relates to the September 14, 2017 search.

---

[11]  The Court notes that Mr. Edwards's claim on this point is at least implausible because Mr. Edwards listed 1659 Ramble Road as his address in his Original Complaint, Doc. No. 2, at 3, and the address appears as the return address on the envelope for Mr. Edwards's Amended Complaint, Doc. No. 7, at 66.

**B. Fifth and Fourteenth Amendment Due Process**

Mr. Edwards alleges that Ms. Rice-Smith violated his Fifth and Fourteenth Amendment right to due process. The basis for this claim is unclear. To the extent that Mr. Edwards asserts that an unlawful search also violated his right to due process, the Court has addressed his arguments in the Fourth Amendment context above. However, the only context in which Mr. Edwards makes an explicit due process-based allegation related to Ms. Rice-Smith is in asserting that she has a "vested interest in the outcome of the case" of "money." Doc. No. 7, at 34. Mr. Edwards does not clarify how Ms. Rice-Smith stood to benefit financially from his health code citations.

In order to pursue a Section 1983 claim, Mr. Edwards must demonstrate that Ms. Rice-Smith was personally involved in the alleged wrongdoing. *Evancho*, 423 F.3d at 353. "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Id.* Mr. Edwards does not allege any basis upon which Ms. Rice-Smith's actions could relate to a personal financial interest. Thus, Mr. Edwards does not allege facts to support a plausible claim for Ms. Rice-Smith violating his due process rights beyond the Fourth Amendment unlawful search claim. The Court will dismiss the Due Process claims as they relate to Ms. Rice-Smith's purported financial interest for failure to state a plausible claim.

**C. Thirteenth Amendment**

Mr. Edwards further asserts that his incarceration violated the Thirteenth Amendment. Construing the Original Complaint and Amended Complaint liberally in his favor, it is possible that Mr. Edwards intends to argue that his constitutional right against imprisonment for failure to pay a debt was violated under the Thirteenth Amendment. *See, e.g., Alkire v. Irving*, 330 F.3d 802, 816 (6th Cir. 2003) (discussing such a claim). However, Ms. Rice-Smith argues that Mr.

Edwards does not assert any facts to establish Ms. Rice-Smith's involvement in his incarceration. Reviewing both the Original Complaint and Amended Complaint, the Court agrees that Mr. Edwards does not allege any facts to support Ms. Rice-Smith's personal involvement in a Thirteenth Amendment claim. As a result, the Thirteenth Amendment claim will also be dismissed for failure to state a claim.

## II.    State Tort Law Claims

Lastly, Mr. Edwards asserts two state tort law claims against Ms. Rice-Smith:  intentional infliction of emotional distress and unlawful imprisonment.  Again, Mr. Edwards fails to allege any facts to infer that Ms. Rice-Smith intended to inflict emotional distress or unlawfully imprisoned him.  He states that her action constitutes "deliberate malice."  Doc. No. 2, at 9. However, the Court need not accept bare legal conclusions at the motion to dismiss stage. *Lloyd*, 442 F. App'x at 631.  Mr. Edwards's only factual allegations are that Ms. Rice-Smith walked around his property, took photographs and turned over some debris. Doc. No. 7, at 2–3. This does not amount to "extreme or outrageous" behavior.  Neither does Mr. Edwards allege that Ms. Rice-Smith confined him in any way.  Mr. Edwards's state tort law claims are dismissed for failure to state a claim.[12]

## III.    Additional Issues

### A. Jurisdictional Challenge

Mr. Edwards also alleges that the Bucks County Court of Common Pleas lacked jurisdiction over his health code citations case.  However, "any attempts to challenge the propriety of the [criminal trial] court's ruling cannot be made in this civil action; the only means for

---

[12] Given that Mr. Edwards fails to allege facts to support a claim of an intentional tort, the Pennsylvania Tort Claims Act also precludes damages. *Jones v. Southeastern Pa. Trans. Auth.*, 565 Pa. 211, 220 (2001).

collaterally attacking a final judgment of conviction are the remedies provided by the state and federal post conviction relief statutes." *Berete v. Cortazzo*, No. 11-CV-4111, 2012 WL 6628040, at *4 (E.D. Pa. Dec. 18, 2012).   Mr. Edwards appears to have appealed his conviction to the Pennsylvania Superior Court on July 13, 2018 and challenged the subject matter jurisdiction of the Court of Common Pleas on September 7, 2018.  Doc. No. 2, at 15–16.  His Superior Court appeal was dismissed for failure to comply with court orders.  Doc. No. 7, at 39.  A Section 1983 claim in this Court does not serve as an alternative means to challenge his conviction and four-day incarceration.[13]

### B. Numbered Paragraphs

Ms. Rice-Smith also seeks to dismiss Mr. Edwards's Amended Complaint in its entirety for failure to use numbered paragraphs.  Doc. No. 20-1, at 6–7.  However, the Third Circuit Court of Appeals has specifically held that Mr. Edwards's combined complaint "adequately states" his Fourth Amendment claim.  App. Op. at 5.  *See also Nardella v. Philadelphia Gas Works*, No. CIV. A. 09-5629, 2010 WL 2736946 (E.D. Pa. July 12, 2010) (rejecting the argument that a *pro se* complaint should be dismissed for lack of numbered paragraphs).  "[W]here, as here, a plaintiff pleads pro se in a suit for the protection of civil rights, 'the court should endeavor to construe the plaintiff's pleading without regard for technicalities.'" *Lockhart v. Hoenstine*, 411 F.2d 455, 458–59 (3d Cir. 1969) (quoting *Picking v. Penna. R.R. Co.*, 151 F.2d 240, 244 (3d Cir. 1945), *reversed on other grounds, Bauers v. Heisel*, 361 F.2d 581 (3d Cir. 1966))).  The Court notes, however, that clear statements of fact will be particularly important for Mr. Edwards as the case progresses.  *Id.* ("Nevertheless, when deciding a motion for summary judgment, it is no legitimate function of the court to assume the existence of a genuine issue of material fact when in truth none exists.").  While

---

[13]  Based on the court records provided in the Original Complaint and Amended Complaint, including his postal return address, it does not appear that Mr. Edwards is currently incarcerated.

*pro se* litigants are indeed indulged in many ways, the Court cannot, in fairness to all parties, abandon all the rules and requirements as ought to be applicable in federal court litigation.

## C. Leave to Amend

Courts in the Third Circuit typically disfavor dismissal of *pro se* claims without leave to amend.  However, a court may dismiss a *pro se* claim with prejudice if amendment would be "inequitable or futile." *Grayson*, 293 F.3d at 108.  Under *Heck v. Humphrey*, a claim for damages is not cognizable under Section 1983 if the claim would necessarily challenge the lawfulness of the plaintiff's conviction or confinement. 512 U.S. 477, 486-87 (1994).  The Third Circuit Court of Appeals noted that, for purposes of Mr. Edwards's Fourth Amendment claim, a warrantless search "would not *necessarily* imply that the plaintiff's conviction was unlawful" due to the doctrines otherwise allowing introduction of evidence gained from the search such as the independence source and inevitable discovery doctrines.  App. Op. at 5 n.3.  However, this carve-out does not apply to Mr. Edwards's remaining Section 1983 claims, all of which directly challenge his conviction or imprisonment.  Mr. Edwards's Section 1983 claims based on due process and the Thirteenth Amendment are barred by *Heck*, so leave to amend would be futile.  Therefore, the Section 1983 claims that fail to state a claim will be dismissed with prejudice.

For Mr. Edwards's state law tort claims, he has already been given leave to amend once. *See Jones v. Unknown D.O.C. Bus Driver & Transportation Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (amendment by *pro se* litigant would be futile when litigant "already had two chances to tell his story").  In his Amended Complaint, Mr. Edwards still fails to allege any actions by Ms. Rice-Smith that would create a plausible inference of intent to inflict emotional distress or unlawful imprisonment.  In fact, the only plausible inference from Mr. Edwards's Original Compliant and Amended Complaint is that Ms. Rice-Smith did not do anything around Mr. Edwards beyond

walking around his property, taking photographs, and turning over debris.  Mr. Edwards alleges

that, upon arriving, the two police officers—not Ms. Rice-Smith—arrested him and took him to a

hearing in a police car.  Doc. No. 7, at 2–3.  Even construing all plausible inferences in Mr.

Edwards's favor, leave to amend the state law tort claims would be futile.  Therefore, the state law

tort claims will be dismissed with prejudice.

CONCLUSION

For the foregoing reasons, Ms. Rice-Smith's motion is denied as to Mr. Edwards's Section

1983 claim based on the March 15, 2018 search, but the motion is granted as to the remaining

claims.  The Court dismisses the Fourth Amendment claim based on the September 14, 2017 search

with prejudice.  The Court dismisses Mr. Edwards's stand-alone Section 1983 claims based on the

Fifth, Thirteenth, and Fourteenth Amendments, and his state tort law claims, with prejudice.  An

appropriate Order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE